J-S05045-19

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| P.S., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| E.B., | : | |
| Appellee | : | No. 1658 WDA 2018 |

Appeal from the Order Entered October 19, 2018
in the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD-06-006250-006

BEFORE:    PANELLA, P.J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:              FILED APRIL 08, 2019

P.S. (Mother) pro se appeals from the order entered October 19, 2018, which denied her petition filed against E.B. (Father) to modify the custody order relating to the parties' 15-year-old son (Child), who was born in 2003. After review, we affirm.

The parties, who were never married, have been litigating custody issues related to Child since 2006.  The parties have shared legal custody, and Father has had primary physical custody of Child since a consent order entered into on August 24, 2009.  Mother has custody of Child the first three weekends of every month and on the Wednesday night preceding Father's weekends. Mother has filed numerous petitions for modification of custody and special relief throughout the years.

---

*Retired Senior Judge assigned to the Superior Court.

Relevant to this appeal, on June 28, 2017, Mother filed a petition for modification of custody. That was the summer prior to Child's entering high school. According to Mother, she had never had the opportunity to decide where Child would go to school and disagreed with Father's decision to send Child for the prior eight years to Allegheny Traditional Academy, a magnet school associated with the Pittsburgh Public Schools.[1] Mother claimed that Child has not done well in school during that time, and that Father was "not a responsible parent and should not be the primary parent during the school year." Petition for Modification of Custody, 6/28/2017, at ¶ 10. In the meantime, Father enrolled Child, without Mother's knowledge or consent, for high school at the Pittsburgh Science and Technology Academy (PSTA), another magnet school associated with the Pittsburgh Public Schools.

A hearing was held before a custody hearing officer, and on September 11, 2017, the trial court adopted the hearing officer's findings. The hearing officer found, inter alia, that Father was in contempt for enrolling Child for high school at the PSTA without informing Mother. The trial court ordered Father to comply strictly with the shared legal custody provision of the custody order. Order, 9/11/2017, at ¶ 3. No modification to custody was made, and Child continued to attend PSTA.

_____

[1] Father resides in the City of Pittsburgh. Mother resides in McKees Rocks, which is part of the Sto-Rox School District. Mother also petitioned the court in 2012 to request that Child change schools. That petition was denied.

On October 28, 2017, after the parties attended a judicial conciliation, the trial court appointed the law firm of Dickey, McCamey & Chilcote as guardian ad litem (GAL) for Child. Attorney Joseph L. Luvara entered his appearance on Child's behalf. Order, 10/28/2017. On February 2, 2018, Mother received the report card for Child's first semester of ninth grade and learned Child was in danger of failing ninth grade. She also learned that Child had missed 7 days of school and was late to school 10 times in the first semester. Thus, on February 22, 2018,[2] Mother filed a petition for special relief, requesting that the trial court grant her primary physical custody of Child. Mother, Father, and GAL filed pre-trial statements, and a one-day trial was held on September 12, 2018. See Trial Court Opinion, 12/11/2018, at 1.

At that hearing, both parties appeared pro se, and GAL was present to represent Child's best interests. All parties agreed that Child did not have to testify. N.T., 9/12/2018, at 2. Mother testified that during the summer of 2018, Child was in a summer credit recovery program to make up credits he failed to earn during his ninth-grade year of high school due to his poor performance. Mother testified she had custody of Child for four of the six weeks he was in the credit recovery program. During that time, Mother had

---

[2] The record also shows that on this day, a truancy meeting was held at the PSTA, which Mother, Father, Child, and the GAL attended. See GAL Report, 9/4/2018, at 1. According to the GAL, "[a]t that meeting, a plan was put into place in an attempt to structure [Child's] school day and school work so that his grades would improve. Apparently, [Child] did not avail himself of that assistance. This led to [Child] taking summer school classes." Id.

her sister, Child's aunt, tutor Child. According to Mother, during Father's custody period, Child did not perform any credit recovery work. Id. at 27. Mother testified that without her help during the summer, Child would have had to repeat ninth grade. Id. at 28.

In addition, Mother testified that she believes the PSTA is "too advanced and a different school would be the better choice for" Child. Id. Mother applied for Child to attend the Montour Propel School. Id. According to Mother, the reasons Child wants to live with Father are that Child has no rules there, and he can stay up late and do whatever he wants. Id. at 32.

Father testified about Child's school performance. Father believes that Child is responsible for his poor grades, and although Father has had discussions with the teachers and the school, it has not helped. Father pointed out that just recently Child turned in two papers, one of which he plagiarized, and another that stated the following: "If I turn in something, I get half credit. I turned in something." Id. at 53-54. Father admitted that he does not "know what else to do for [Child] to get him to actually do ... better." Id. at 54. According to Father, Child is "a very bright child. He refuses to actually do the work." Id. at 64.

The GAL then had the opportunity to cross-examine both Mother and Father. Due to time constraints, the trial court requested that the GAL submit

his written report. The GAL agreed,[3] and added that he spoke with Child the night before the hearing. Child was "satisfied" with the custody order the way it is. Id. at 77. The GAL believes that "no matter where [Child's] primary custody is, it rests on [Child] to decide whether or not he wants to make a success out of himself." Id. at 77. The trial court asked Mother if she would like to add anything. Mother reiterated her position that Montour Propel would be a better fit for Child. Id. at 78. The trial court, Mother, Father, and the GAL then engaged in a lengthy discussion about how better to supervise Child's homework. The trial court ended the hearing. Id.at 96.

On October 19, 2018, the trial court entered an order denying Mother's request for primary physical custody. In that order, the trial court set forth the following, in relevant part.[4]

> In order to make a determination for custody, the [trial court] must examine 16 different factors. They are listed below.

_____

[3] In the GAL's report, the GAL stated that Child's preference is to remain at PSTA with Father still having primary custody. Report, 9/4/2018, at 2. The GAL requested that the trial court maintain "the status quo" and "maintain [Child's] enrollment in the [PSTA]." Id. at 6.

[4] The factors to be considered by a court when awarding custody are set forth in 23 Pa.C.S. § 5328(a). The trial court has set forth each factor in order, in bold type to correspond with subsections 5328(a)(1)-(16). The only factor not considered by the trial court was 23 Pa.C.S. § 5328(a)(2.1), which provides that the trial court shall consider "[t]he information set forth in [sub]section 5329.1(a) (relating to consideration of child abuse and involvement with protective services)." However, there is no allegation that child protective services has been involved in this case; thus, this factor is irrelevant.

1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party?

Father has been more than willing to work with Mother and allows frequent contact.

2. Is there, or has there been in the past, abuse committed by a party or a member of the parties household?

This is not a factor.

3. What are the parental duties performed by each party on behalf of the child?

Both parties are fully able to take care of [] Child.

4. Which party can best provide for stability and continuity in the child's education, family life, and community life?

[] Child has been in Father's primary care for almost ten years. He is happy there and thriving. Other than the legitimate concerns about his grades, there is no reason to completely upend [C]hild's life.

5. The availability of the extended family.

Both parties have extended families.

6. The child's sibling relationships.

[] Child has no siblings.

7. The well-reasoned preference of the child based on the child's maturity and judgment.

[] Child's strong preference is to keep the custody order as it is.

8. The attempts of a parent to turn the child against the other.

This is not a factor.

9. Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs?

Again, [] Child has been in the primary custody of Father for many years. Mother "blames" Father for [] Child's school problems, with little proof, but more importantly, Mother fails to consider any other issues [] Child is experiencing. Mother's claim is simply, "if he were in my custody, I would make him study and then he would get good grades." [Mother's] view is very overly simplistic.

10. Which party is more likely to attend to the daily physical, emotional, and educational development, and special needs of the child?

Both parents are capable of taking care of [] Child's needs.

11. The proximity of the residences of the parties.

The parties live too far apart for true shared custody.

12. Each party's availability to care for the child or ability of the parties to cooperate with one another.

This is not an issue.

13. The level of conflict and [the] willingness and ability of the parties to cooperate with one another.

There is a great deal of conflict between the parties. Father should keep Mother more informed, however Mother runs to [c]ourt with every little issue that occurs.

14. The history of drug or alcohol abuse of a party or a member of the parties' household.

This is not a factor.

15. The mental and physical condition of a party or member of a party's household.

This is not an issue.

16. Any other relevant factor.

Mother requests that the [c]ourt remove [] Child from Father's primary custody, and enroll him in one of the worst school districts in Allegheny County because "she" can get him to do his homework. Mother's understanding of [] Child's issues is of concern. The GAL did an excellent job of contacting the Child's school and teachers and also in talking to [] Child. In the GAL's opinion, [] Child is unmotivated, but this is not Father's fault.

Mother has also complained that Father will not "let" [] Child become involved in activities. The facts produced at trial proved otherwise. Father is fully cooperati[v]e with anything [] Child wishes to do. The GAL also provided evidence that [] Child does not want to be involved in the activities Mother wants.

Mother has spent almost ten years blaming Father for anything and everything and has dragged him into [c]ourt literally dozens of times, which is not in [] Child's best interest.

The Court finds no reason to make any changes in custody. Accordingly, there will be no modification of the August 24, 2009 order.

Order of Court, 10/19/2018, at 3-5.

Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court filed an opinion in response on December 11, 2018.

On appeal,[5] Mother sets forth numerous issues for our review, which we have reordered for ease of disposition.

[I.]   Weather [sic] the trial court abused its discretion when it limited the one day trial to noon due to the courts [sic] other prior obligation without informing Mother and therefore denying Mother the right to cross the GAL as permitted by 231 [sic] Pa.C.S.

_____

[5] Father has not filed a brief on appeal. The GAL has filed a brief on behalf of Child's best interests.

- 8 -

§ 1915.11-2 and provide rebuttal evidence or the ability to cross Father and provide rebuttal evidence?

[II.] Weather [sic] the trial court erred in failing to provide a written opinion or state on the record in open court the reasons for its decision as required by § 5328(d)?

[III.] Weather [sic] the trial court abused its discretion and committed reversible error when it failed to apply or consider any of the evidence provided by Mother regarding the custody factors set forth in 23 Pa.C.S. § 5328(a)?

[IV.] Weather [sic] the trial court erred or abused its discretion in denying Mother's [p]etition for modification for primary custody of [Child] to Mother or a different award of custody as 23 Pa.C.S. § 5323(a) permits, when Father did not testify or present any evidence regarding the custody factors.

[V.] Weather [sic] the trial court abused its discretion in the assumption that [Child] was thriving when the testimony and evidence was to the contrary and erred when it failed to address Mothers [sic] change to [Child's] schooling to Montour Propel?

[VI.] Weather [sic] the trial court erred and abused its discretion when it based its findings solely on the GAL's report and pretrial statement when the court entered it's [sic] [c]ourt order dated October 16, 2018's [sic] determination "The Court finds no reason to make changes in custody. Accordingly, there will be no modification of the August 24, 2009 order"?

Mother's Brief at 3-4.

We begin with Mother's contention that the trial court erred by ending a one-day trial at noon. Mother's Brief at 34-35. According to Mother, she did not have the opportunity to cross-examine the GAL or Father.

In considering Mother's issue, we point out that "[i]t is axiomatic that the conduct of a trial is the province of the judge. His [or her] discretion,

exercised without abuse, must control." De Fulvio v. Holst, 362 A.2d 1098, 1099 (Pa. Super. 1976).

In this case, at the beginning of trial, the trial court pointed out that it recognized this case was being litigated by two pro se parties. N.T., 9/12/2018, at 4. The trial court explained that because parties cannot question themselves, it would permit each to tell his or her "side of the story." Id. The trial court then told Mother and Father they were welcome to cross-examine each other if they wished. Id. at 6. Mother testified first in narrative form, and Father elected not to cross-examine her. Id. at 40. Father then testified, and the GAL had the opportunity to cross-examine him. The GAL then asked if he could ask questions of Mother, which the trial court permitted. The trial court then stated the following: "I have a meeting at noon. I think we could probably wrap this up and you guys go home, but I want everybody to have their say. What I was suggesting for you [GAL] is if we just put your report in." N.T., 9/12/2018, at 76. Mother did not object to this procedure. Additionally, the trial continued for quite a bit to permit the trial court to discuss with Mother, Father, and GAL potential solutions to Child's lack of motivation and how to better supervise his homework. Id. at 76-95.

It is well-settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Here, the transcript reveals that Mother did not object to the trial court's ending the hearing or her lack of opportunity to cross-examine the GAL or Father.

Accordingly, we conclude that Mother has waived this issue on appeal. Moreover, even if Mother did not waive this issue, we discern no abuse of discretion by the trial court. Mother has not set forth any areas of inquiry for either Father or the GAL, nor has she convinced us that the trial court's ultimate decision would have been different if she had had the opportunity to ask questions. Accordingly, Mother is not entitled to relief.

Mother next complains the trial court erred by "failing to file a written opinion or state on the record in open court the reasons for its decision as required by" 23 Pa.C.S. § 5323(d). Mother's Brief at 35. Mother argues that the trial court's December 11, 2018 opinion fails to satisfy these requirements. Id. at 36.

Mother's argument completely ignores the trial court's October 19, 2018 written order, cited supra. That order delineates each factor and explains the trial court's reasoning for its findings. Such order fully complies with the mandates of subsection 5323(d), and therefore, Mother is not entitled to relief on this basis. See M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013) ("[T]here is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.").

Mother's final four issues all set forth complaints about the trial court's custody order. We address Mother's claims mindful of our well-settled standard of review.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001). "Further, as we have stated many times before, the paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual wellbeing." *Id.* at 838–39 (citations and quotations omitted).

"[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *Billhime v. Billhime*, 869 A.2d 1031, 1036 (Pa. Super. 2005) (citation omitted).

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*S.M. v. J.M.*, 811 A.2d 621, 623 (Pa. Super. 2002)

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (some citations omitted).

Here, Mother complains the trial court did not consider "any of the evidence provided by Mother" in reaching its decision. Mother's Brief at 9. Mother goes on to set forth each factor and explain how her own testimony supports her conclusion that the trial court should have found the factor favored Mother.[6] Id. at 9-29. Mother argues the trial court erred in finding Father more "creditable [sic]" with regard to the 16 custody factors when "Mother was the only parent to testify regarding" those factors. Id. at 29-30. Mother further suggests the trial court erred in concluding Child was "thriving" when Child was not doing well in school. Id. at 32. According to Mother, the trial court did not consider her request to change Child's school to Montour Propel. Id. at 33. Finally, Mother argues the trial court erred in relying so heavily on the report of the GAL when GAL did not have the opportunity to review the entire case file.[7] Id. at 37.

_____

[6] Mother attempts to rehash 10 years of custody litigation and infractions. See Mother's Brief at 11 (referring to a 2011 incident at a custody exchange); id. at 12 (claiming Father refused to permit Child to have yearly well-visits at the pediatrician); id. at 17, 26 (claiming that Father refused to enroll Child in activities, such as soccer, over the years); id. at 19 (referring to a 2014 contempt order and issues with a custody exchange at that time); and id. at 23 (referring to Father's driving under the influence in 2013). These issues have been litigated and decided through various court proceedings and contempt orders before the trial court. They are simply not relevant at this juncture.

[7] Mother claims that the GAL could not have reviewed the entire case file because it is sealed and only accessible by ordering the case record. Mother's Brief at 37. It is not at all clear whether this is accurate. However, what is clear is that the GAL spoke with Child several times and also attended the

Here, the trial court offered the following in response to these issues.

Both parties represented themselves and the [trial court] gave them considerable leeway in presenting their evidence. Mother ran through all the custody factors and claimed each one favored her. Father rebutted Mother's testimony and presented a more general background on his parenting style and the issues [] Child was having. The [trial court] found Father to be more credible than Mother.

* * *

The case has been before the [trial court] since 2006. Mother has filed dozens of motions blaming Father for anything and everything. The [trial court] is aware of the animosity Mother holds against Father and her inability to communicate with him. [] Child has been in the primary custody of Father for nearly 10 years. Except for his grades, [] Child has fared well under the current custody arrangement. He expressed a strong preference to continue in the primary custody of Father. Mother believes that she is the better parent to supervise his schoolwork and that she would motivate him to do better by allowing him to participate in activities such as soccer as his grades improve. Mother has joint [legal] custody of [] Child. While Mother has filed dozens of custody motion[s], she has never petitioned the [trial court] to change schools or to require Father to allow [] Child to participate in activities. [The GAL] confirmed that [] Child is not motivated to do schoolwork and is not interested in participating in any activities. Father has tried to supervise [] Child's homework to no avail. Mother supervised [] Child's summer schoolwork for four weeks.

The [GAL] submitted a report and [p]retrial [s]tatement in which he reviewed the 16 custody factors. He interviewed [] Child several times. The recommendation of the [GAL], a former high school teacher, is that the present custodial order remains in place.... [] Child expressed a strong preference to continue at PSTA and is intellectually capable of doing well if he decides to take a

_____

truancy meeting at the PSTA. Thus, we discern no error or abuse of discretion in the trial court's reliance on the GAL's report where, even if he was not familiar with the entire history of the case, he was very familiar with the issues at hand.

more serious attitude towards school. The [trial court] considered all relevant factors and set forth its findings on each in the October 19, 2018 [o]rder. Most were equal, not applicable or favored Father.

[The trial court] recognized that [] Child is not motivated to do well in high school. Mother did not present evidence that changing custody would make a difference. She claimed to be better able to supervise his studies than Father. She claimed that his current school was too difficult and suggested enrolling him in [Montour Propel] school. At the same time, she acknowledged his preference to remain in his current school, an impossibility if he lived with her. Mother had no viable suggestions on how to motivate [] Child to succeed.

Trial Court Opinion, 12/11/2018, at 3-5.

In considering the trial court's conclusions and Mother's arguments, we are cognizant that Child has been in Father's primary custody since he was six years old and wishes for things to remain the same. Here, Mother recognizes that "[t]he undisputed preference of the child is to keep the current custody arrangement." Mother's Brief at 18. However, she claims "this is not in [Child's] best interest." Id.

"A party seeking modification of custody arrangements has the burden to show that modification is in the child's best interest." J.M.R. v. J.M., 1 A.3d 902, 911 (Pa. Super. 2010). Thus, it was Mother's burden to convince the trial court that it was in Child's best interest to uproot him from the home of Father, where he has resided primarily for the past 10 years, and that Child would be better off in her primary custody. This burden is particularly difficult to overcome under these circumstances, where Child is a teenager and has expressed a preference to remain in Father's primary physical custody.

- 15 -

That being said, we too question the trial court's conclusion that Child is "thriving." See Mother's Brief at 32-34. Mother offers some salient points regarding her concerns about Child's grades and attendance at PSTA. Id. at 34 (stating that when in Mother's physical custody, Child performed well in summer school). However, PSTA is the school where Child wishes to remain, which is an important factor when considering Child's motivation to succeed in high school.[8] Moreover, the record established that after the February 2018 truancy meeting, Child's attendance at school during that year improved.[9] However, the September 2018 custody hearing was far too early into the following school year to see whether that trend continued. In addition, as the trial court pointed out, it is not at all clear, and thus Mother has not met her burden in showing, that Child's grades and attendance would improve simply by altering the custody arrangement.

Here, it is apparent the trial court thoroughly and thoughtfully considered Child's best interest and determined that it was in Child's best interest for the custody order to remain the same; thus, considering our deferential standard of review, we cannot agree that the trial court abused its discretion. Based on the foregoing, we affirm the order of the trial court.

_____

[8] If Child is in Mother's primary custody, he could no longer attend PSTA because his primary residence would not be in the City of Pittsburgh. N.T., 9/4/2018, at 76.

[9] The record shows that Child was tardy several times because the bus he takes, which is public transportation, was late. N.T., 9/4/2018, at 73-74.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/8/2019